UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPPECHANGE LLC,<br>        Plaintiff,<br>    v.<br>VEON LTD., et al.,<br>        Defendants. | Case No. 18-cv-04842-WHO<br><br>**ORDER DENYING STEPPECHANGE'S MOTION TO REMAND; GRANTING VEON'S MOTION TO COMPEL ARBITRATION; GRANTING WIND'S MOTION TO COMPEL ARBITRATION IN PART; GRANTING VEON'S MOTION TO SEAL**<br><br>Re: Dkt. Nos. 27, 33, 35, 3 |

Plaintiff SteppeChange LLC ("SteppeChange") brings suit against VEON Ltd. ("VEON") and Wind Tre S.p.A. ("Wind"), alleging that it was never paid for one of two software projects it developed on defendants' behalf. Defendants move to compel arbitration and to dismiss the complaint. In support of their motions to compel arbitration, defendants contend that a contract relating to the other software project delegates questions of arbitrability to the arbitrator and requires that SteppeChange's claims against VEON be sent to arbitration to at least decide this threshold issue. As I find that questions of arbitrability have clearly and unmistakably been delegated to the arbitrator and that VEON's assertion of arbitrability is not wholly groundless, I grant VEON's motion to compel arbitration. This case is stayed as to both defendants to prevent confusion, waste of judicial resources, and inconsistent results.

SteppeChange also moves to remand this case back to state court, arguing that removal was untimely. I deny the motion to remand because removal was timely under 28 U.S.C. § 1446(b) and California Code of Civil Procedure § 415.50.

# BACKGROUND[1]

SteppeChange is a Palo Alto, California based technology company that provides big-data analytics and digital-transformation services. Complaint attached as Ex. A to the Notice of Removal [Dkt. No. 1-3] ("Compl.") ¶¶ 1, 19. VEON provides cellular phone and data services in Europe, Africa, and Asia through its subsidiaries, including Wind. *Id.* at ¶ 2. VEON is incorporated under the law of Bermuda with a registered business office in the Netherlands. *Id.* at ¶ 20. Wind is incorporated and has a registered office in Italy. *Id.* at ¶ 21.

SteppeChange alleges that, through intermediaries, it worked on two projects for the benefit of VEON and Wind. The first project, referred to as "Button," was to develop a customer messaging and interaction platform. *Id.* at ¶ 64. In or around May 2015, VEON contracted with nonparty company GS&CO to create Button. *Id.* GS&CO then engaged SteppeChange via an oral time-and-materials agreement to design and develop Button. *Id.* VEON and Wind were informed and aware that SteppeChange was the driving force behind the design, development, and implementation of the Button project. *Id.* at ¶ 66. Button was released to VEON customers in the Italian Wind-branded markets on or about October of 2016. *Id.* at ¶ 67.

## I. THE DMP PROJECT

The second project, and the one that is the subject of this suit, was to create, implement, manufacture, and support a digital customer-data marketing and management strategy and platform including a data management platform solution (the "DMP Project"). *Id.* at ¶ 69. On or about May 4, 2016, Wind entered into a joint venture with nonparty meForo Limited ("meForo") to jointly fund and share in the proceeds of the DMP Project, with meForo ultimately operating and licensing the DMP Project to various telecommunications providers, including Wind, other subsidiaries of VEON, and other non-affiliated entities. *Id.* at ¶ 72. The Wind-MeForo Joint Venture was overseen by a six-member project board, with three of the six members appointed by VEON's CEO and chairman. *Id.* at ¶ 73. The parties estimated that it would cost Wind and meForo €24,000,000 each to fully develop the DMP Project. *Id.* at ¶ 74. The DMP Project was to

---

[1] I accept SteppeChange's allegations in the complaint as true for the purposes of this motion.

2

be divided into 15 "use cases," with the development of every three use cases constituting a separate phase of the DMP Project. *Id.* Under the terms of the joint venture, Wind was entitled to discounted licensing for its own iteration of the DMP software and a percentage of the revenues collected from third parties. *Id.* at ¶ 75. Neither defendant would obtain any intellectual or proprietary interest in the DMP software, although they would receive a limited license corresponding to continued payments for their use of the DMP software and a limited option to purchase the DMP software. *Id.*

Beginning in early 2016, SteppeChange became involved with the DMP Project pursuant to an oral agreement with the Wind-meForo joint venture. *Id.* at ¶ 76. SteppeChange would ultimately delivered eight use cases to defendants. *Id.* at ¶ 78. They included detailed data-science analytical papers and reports, accompanying presentations, and source code. *Id.* The first six use cases correlated to completion of the first two phases of the DMP Project and were valued at a combined €22 million, made up of the initial €3 million investment, plus two €4 million milestones from each contributor under the terms of the Wind-meForo joint venture documents. *Id.* SteppeChange presented the six use cases, along with two additional use cases requested by Wind, to defendants for approval and made the software code available to defendants through remote-access servers. *Id.* at ¶ 79. Defendants were aware that the use cases were developed for their benefit and were in frequent contact with SteppeChange personnel. *Id.*

## II. NONPAYMENT FOR THE BUTTON AND DMP PROJECTS

In Fall of 2016, SteppeChange stopped receiving payments for its work on the Button and DMP Projects. *Id.* at ¶ 82. From November 2016 to January 2017, SteppeChange sought to resolve these payments with nonparty intermediaries GS&CO and meForo. *Id.* at ¶¶ 83-84. After failing to secure payment, on February 7, 2017, SteppeChange suspended access to the Button and DMP Project source code repositories and test environments. *Id.* at ¶ 84. VEON CTO Yogesh Malik, and another VEON employee, Tero Kivisaari, reached out to SteppeChange almost immediately to determine the cause of the suspension and indicated that they would attempt to resolve the issue. *Id.* at ¶¶ 84, 88. SteppeChange alleges that the suspension of access caused defendants' senior executives, including VEON CEO Jean-Yves Charlier and VEON Chairman

3

Alexey Reznikovich, to learn that SteppeChange had not been paid and that defendants did not own or control the intellectual property for either the Button or DMP Projects. *Id.* at ¶¶ 86, 89. SteppeChange's unpaid DMP Project invoices for the period between November 2016 and December 2017 add up to $6,429,500 with an additional $266,212.84 in expenses. *Id.* at ¶ 87.

Between February 14-16, 2017, SteppeChange CEO Igor Neyman held several discussions with Charlier and Reznikovich, including during a trip to San Francisco by Reznikovich, to determine what had happened and to negotiate the restoration of access to the software repositories. *Id.* at ¶¶ 92-97. Reznikovich's attempts to secure payment from GS&CO and meForo were unsuccessful. *Id.* at ¶ 95. On or around February 17, 2017, based on repeated promises by Charlier, Malik, and other VEON and Wind personnel that SteppeChange would be compensated for its work on both the Button and DMP Projects, SteppeChange restored server access. *Id.* at ¶ 98. Over the following months, defendants reiterated their promises to resolve the payment issues and to first deal with issues related to the Button Project followed by the DMP Project. *Id.* at ¶¶ 99-102.

In and around May and June 2017, the parties exchanged terms and draft agreements to resolve the Button issues. *Id.* at ¶ 104. On June 7, 2017, VEON, meForo, and SteppeChange executed a series of agreements (the "Button Deed") to resolve all outstanding claims related to the Button Project and VEON paid SteppeChange for its work and intellectual property rights related to the Button Project. *Id.* at ¶ 106. The agreements acknowledged the outstanding DMP Project issues but did not resolve them. *Id.*

### III. NONRESOLUTION OF THE DMP PROJECT

On or about June 7, 2017, VEON Group Director of Digital Integration and Architecture and Head of DMP and Project Management for Data Analytics and Data Management Nuno Sousa emailed SteppeChange to request full access to the models and source code for the first three uses cases. *Id.* at ¶ 107. Several other VEON personnel also requested source code access. *Id.* On or around June 10, 2017, VEON and Wind personnel received access to SteppeChange's code repository for the DMP Project. *Id.* at ¶ 109. SteppeChange provided the requested workshop for the use cases three days later. *Id.*

SteppeChange continued to contact defendants regarding payment for the DMP Project. On August 3, 2017, Charlier reported to Neyman that VEON and Wind were, in line with the Button arrangement, working with meForo to negotiate a resolution between defendants and meForo so that defendants could directly deal with SteppeChange. *Id.* at ¶ 115. SteppeChange and VEON continued to communicate regarding payment for the DMP Project through January 2018 and defendants continued to represent that they intended to work together on the DMP Project as well as future projects. *Id.* at ¶¶ 116-120.

On January 16, 2018, Wind CTO Benoit Hanssen told Neyman that Wind had "some time ago, decided to go a different way" and had "engaged another party that has been progressively developing in conjunction with [their] teams the [use cases]" and that Wind did "not see an option to engage with SteppeChange at the same time." *Id.* at ¶ 122. On March 2, 2018, SteppeChange sent a letter to Charlier demanding that VEON fulfill its promise regarding the DMP Project and provide SteppeChange with compensation for the use of its work product and intellectual property rights. *Id.* at ¶ 125. On March 12, 2018, Charlier responded via letter stating that defendants had "no contractual obligation" to SteppeChange in relation to the DMP Project. *Id.* at ¶ 126.

SteppeChange alleges that defendants' personnel lacked the ability to develop the needed work product, deliverables, and intellectual property themselves and used SteppeChange to obtain the needed deliverables and know-how. *Id.* at ¶ 123. It accuses defendants of misappropriating its work product, deliverables, and intellectual property before dismissing SteppeChange as a vendor and refusing to provide the promised payments to SteppeChange. *Id.*

**IV. PROCEDURAL HISTORY**

SteppeChange's complaint brings claims for fraud, conspiracy to commit fraud, negligent misrepresentation, unfair competition, unjust enrichment, involuntary trust, promissory estoppel, and quantum meruit against both defendants. Compl. Defendants removed the case from the Superior Court of the State of California for the County of San Mateo and SteppeChange moved to remand, arguing that defendants' notice of removal was not timely filed. [Dkt. Nos. 1, 27]. Both defendants moved to compel arbitration, arguing that the terms of the Button Deed require SteppeChange's DMP Project claims to be arbitrated in the United Kingdom. [Dkt Nos. 33, 35].

5

In the alternative, Wind moves to stay this case if SteppeChange's motion to compel arbitration is granted. [Dkt. No. 35].[2]

**LEGAL STANDARD**

**I. MOTION TO REMAND**

A defendant sued in state court may remove the action to federal court if the action could have been brought in federal court in the first instance. 28 U.S.C. § 1441(a). Removal is generally based on the existence of either federal-question jurisdiction or diversity jurisdiction. Federal question jurisdiction exists where the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the case is between citizens of different states, or citizens of a state and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(2). A defendant desiring removal must file in the appropriate United States district court a notice of removal "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders" thus far served upon the defendant in the action. 28 U.S.C. § 1446.

If at any time following removal, it appears that removal was improper because of a lack of subject matter jurisdiction, the case must be remanded to state court. 28 U.S.C. § 1447(c). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction;" accordingly, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks and citations omitted). This strong presumption against removal jurisdiction means that the defendant always has the burden of proving, by a preponderance of the evidence, that removal was proper. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Gaus*, 980 F.2d at 566. Whether removal was proper is determined primarily on the basis of the pleadings at the time of removal. *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th

---

[2] Defendants also moved for dismissal for failure to state a claim. [Dkt Nos. 29, 31]. I deny those motions without prejudice because I am granting the motion to compel arbitration, at least as to arbitrability. The motions may be re-noticed after that initial determination has been made by the arbitrator.

Cir. 1998); *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). However, the court may also consider affidavits or other "summary-judgment-type evidence" submitted after the defendant's motion to remand is filed. *Singer*, 116 F.3d at 377; *see also*, *Altamirano v. Shaw Indus., Inc.*, No. 13–00939–EMC, 2013 WL 2950600 at *3 (N.D. Cal. June 14, 2013) ("A court may properly consider evidence the removing party submits in its opposition to remand, even if this evidence was not submitted with the original removal petition.").

## II. MOTION TO COMPEL ARBITRAITON

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 et seq. Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

## DISCUSSION

## I. STEPPECHANGE'S MOTION TO REMAND

On June 20, 2018, SteppeChange filed its complaint in California Superior Court for the County of San Mateo. [Dkt. No. 1-3]. On July 2, 2018, SteppeChange formally served both defendants pursuant to California Code of Civil Procedure Section 415.40 by mailing the summons and complaint to defendants' agents and executives. Mot. To Remand 3 [Dkt. No. 27]. VEON's registered agent in the United States was served via USPS certified mail and its executive chairperson was served in the Netherlands via international registered mail. *Id.* Wind's officers were served via international registered mail in Italy. *Id.* SteppeChange believes that VEON's notice of removal, filed on August 10, 2018, was untimely by one day. *Id.* at 7.

VEON argues that removal was timely under 28 U.S.C. § 1446(b). VEON's Opposition to the Motion to Remand 4-9 [Dkt. No. 39]. VEON also contends that under 9 U.S.C. § 205 "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]" removal is proper any time before the claims are adjudicated. *Id.* at 2-4. Wind joins VEON's opposition in full and also argues that SteppeChange's service failed to comply with California law and that SteppeChange is equitably estopped from relying on its own violation of the law. Wind's Opposition to the Motion to Remand. [Dkt. No. 40].

For removal to be timely, a defendant wishing to remove a case to federal court must file a notice of removal within 30 days of receiving "through service or otherwise [a] copy of the initial pleading setting forth the claim for relief . . . ." 28 U.S.C. § 1446(b). Formal service of process, measured from the service date according to state law, is a prerequisite for triggering the 30–day removal period because it "assures defendants adequate time to decide whether to remove an action to federal court." *See Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process"); *see also* Hon. William W. Schwarzer, et al., Federal Civil Procedure Before Trial National Edition (The Rutter Group) ¶¶ 2.3255-2.3257 (removal period is triggered by service of process, which is determined by state law). Under California law, a nonresident defendant can be served by mailing the defendant copies of the summons and complaint "by first-class mail, postage prepaid, requiring a return receipt." Cal. Code Civ. Pro. § 415.40. Service is deemed complete "on the 10th day after such mailing." *Id.*

Here, SteppeChange served the required documents to the out of state defendants by registered domestic and international mail on July 2, 2018. Under Cal. Code Civ. Pro. § 415.40, service was deemed complete ten days later on July 12, 2018. As such, defendants' notice of removal on August 10, 2018, was filed 29 days after service was complete and in accordance with 28 U.S.C. § 1446(b).

SteppeChange argues that 28 U.S.C. § 1446(b) should be interpreted to require that the

8

removal period begins 30 days from the date that the summons and complaint were delivered to VEON's agent for service of process. Mot. to Remand 2, 7-8. This is contrary to the United States Supreme Court's decision in *Murphy*, 526 U.S. at 347–48, the Ninth Circuit's unpublished decision in *Jimena v. Standish*, 504 F. App'x 632 (9th Cir. 2013), and the decisions of numerous courts in this district. *See e.g. Fruciano v. Regents of Univ. of California*, No. 18-CV-04452-JSC, 2018 WL 4219232, at *3 (N.D. Cal. Sept. 5, 2018); *Madren v. Belden, Inc.*, No. 12-CV-01706-RMW, 2012 WL 2572040, at *2 (N.D. Cal. July 2, 2012); *Varga v. United Airlines*, No. C 09-02278 SI, 2009 WL 2246208, at *3–4 (N.D. Cal. July 24, 2009); *Big B Auto. Warehouse Distributors, Inc. v. Coop. Computing, Inc.*, No. SC 00-2602, 2000 WL 1677948, at *3 (N.D. Cal. Nov. 1, 2000).

The weight of authority is overwhelming. Two of the cases SteppeChange cites do not turn on service under Cal. Code Civ. Pro. § 415.40. *McGregor v. Am. Diabetes Ass'n*, No. C 07-2820 MEJ, 2007 WL 2225837, at *1 (N.D. Cal. July 30, 2007) (service to a resident defendant did not fall under § 415.50); *Morgan v. Asbestos Defendants (BHC)*, No. C 02-05761 WHA, 2003 WL 945987, at *1 (N.D. Cal. Feb. 28, 2003) (declining to consider the effect of § 415.50 under the first served rule not at issue in this case). SteppeChange's third case was decided before the Supreme Court's decision in *Murphy*. *See Spielman v. Standard Ins. Co.*, 932 F. Supp. 246, 247 (N.D. Cal. 1996).

I deny SteppeChange's motion to remand as removal was timely under 28 U.S.C. § 1446(b) and California Code of Civil Procedure § 415.50. As such, I need not consider defendants' remaining arguments related to 9 U.S.C. § 205 or equitable estoppel.

## II. VEON'S MOTION TO COMPEL ARBITRATION

Under federal law, "[t]he question whether parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citations, quotation marks, and modifications omitted). First, courts must determine if the parties clearly and unmistakably assigned the arbitrability question to the arbitrator. *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law). Second, courts

must perform a "more limited inquiry to determine whether the assertion of arbitrability is wholly groundless." *Id.* (internal quotation marks omitted).

VEON and Wind argue that pursuant to the terms of arbitration clause in the Button Deed[3], the arbitrator should decide the threshold question of arbitrability. [Dkt. Nos. 33, 35]. The arbitration provision states:

> Any dispute, claim, controversy or difference arising out of or in connection with this Deed, including for the avoidance of doubt, the Oral Agreement and/or the Services Agreements (and any matters relating to them), including any question regarding its existence, validity, interpretation or termination or any dispute regarding any non-contractual obligations arising out of or in connection with it (a "Dispute"), shall be referred to and finally resolved by arbitration under the [London Court of International Arbitration ("LCIA")] Rules (the "Rules"), which Rules are deemed to be incorporated by reference into this Clause.

Button Deed ¶ 11.2. Article 23.1 of the LCIA Rules states that "[t]he Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement."

In opposition, SteppeChange argues that the arbitration provision, including its incorporation of the LCIA rules, does not apply to its claims because it only seeks relief for claims associated with the DMP Project. The Button Deed states in part:

> For the avoidance of doubt any services provided by SteppeChange to meForo in respect of the DMP Software Development and Marketing Agreement dated 4 May 2016 between meForo and [Wind] (the "DMP Agreement") are separate from and not included in the Services Agreements.

*Id.* at Recital A. It further disclaims:

> Pursuant to an oral and/or implied agreement, meForo engaged SteppeChange as its subcontractor under the Services Agreements (without providing SteppeChange with a copy of the Services Agreement), for the purpose of carrying out services and development under the Services Agreements including developing Deliverables (the "Oral Agreement") and references to the Oral Agreement shall be

---

[3] VEON requests that I take judicial notice of the Button Deed attached as Exhibit B to the declaration of Matthew Matule in VEON's notice of removal. [Dkt. No. 32]. Although SteppeChange opposes VEON's request for judicial notice of the Button Deed in VEON's motion to dismiss, both parties rely heavily on the Button Deed in their briefing related to VEON's motion to compel arbitration. I take judicial notice of the Button deed pursuant to Fed. R. Evid. 201.

10

limited to the agreement defined in this recital, and shall not include any other oral and/or implied agreements relating to other services, including for the avoidance of doubt any services provided by SteppeChange to meForo in respect of the DMP Agreement.

*Id.* at Recital B.

It is simple enough to determine that the parties agreed to arbitrate arbitrability under the broad scope of the arbitration clause. In the Ninth Circuit, incorporation of an arbitrator's arbitration rules constitutes evidence that the parties agreed to arbitrate arbitrability. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the [arbitrator's] rules delegates questions of arbitrability to the arbitrator"). Here, the Button Deed is a commercial contract between three sophisticated parties, SteppeChange, VEON, and meForo. The Button Deed clearly incorporates the LCIA Rules. Button Deed ¶ 11.2. The invocation of the LCIA Rules in the Button Deed constitutes clear and unmistakable evidence that the parties have agreed to arbitrate arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015) (finding that incorporation of American Arbitration Association rules constitutes clear and unmistakable evidence).

The harder question is whether defendants' efforts to overcome the language on which SteppeChange relies to carve its claims out from the arbitration clause are "wholly groundless." *See Qualcomm Inc.*, 466 F.3d at 1371. This is a very low bar for defendants to clear. In conducting this inquiry, courts "should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration." *Id.* at 1374. "Because any inquiry beyond a 'wholly groundless' test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by . . . the district court need not, and should not, determine whether [the claims or defenses] are in fact arbitrable." *Id.* If the assertion of arbitrability is not "wholly groundless," then I must stay the trial pending a ruling on arbitrability by an arbitrator, whereas if the assertion of arbitrability is "wholly groundless," then I must deny the stay under Federal Arbitration Act § 3. *Id.* at 1371.

The arbitration provision here is broad. It covers "[a]ny dispute, claim, controversy or

11

difference arising out of or in connection with this Deed[.]" Button Deed ¶ 11.2. The complaint is similarly wide-ranging, repeatedly referencing the Button Project and Button Deed in an apparent attempt to show a course of dealing between SteppeChange and the defendants. *See e.g.* Compl. ¶¶ 133-174, 193-201. SteppeChange also references the Button Deed to support its claims for fraud, conspiracy to commit fraud, negligent misrepresentation, and promissory estoppel. *Id.* For example, SteppeChange's negligent misrepresentation claim states that "Defendants' misrepresentations and false promises concerned material subject matter and substantially influenced SteppeChange to . . . resolve the Button matter . . . ." *Id.* at ¶ 168. This is sufficient to satisfy the permissive "wholly groundless" standard.

SteppeChange argues that incorporation of the LICA Rules does not change the outcome and attempts to distinguish VEON's cited authority. Opposition to VEON's Mot. to Compel Arbitration [Dkt. No. 44] 9-11. It contends that VEON's reliance on *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) is misplaced because there, the Supreme Court found that the plaintiffs had not agreed to arbitrate arbitrability. But as discussed above, here there is clear and unmistakable evidence to the contrary. SteppeChange also argues that under *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013), even contractual language delegating arbitrability to an arbitrator is insufficient. But in *Kramer*, the party seeking to enforce the arbitration clause was a not a signatory to the contract, whereas here both SteppeChange and VEON signed the Button Deed.

SteppeChange asks that I follow *Malhotra v. Copa De Oro Realty, LLC*, No. 13-cv-4146 (C.D. Cal July 21, 2014) (ECF No. 95) ("*Malhotra I*"), aff'd 673 F. App'x 666 (9th Cir. 2016) ("*Malhotra II*"). *Malhotra* involved a dispute arising out of a (defendant) son's alleged failure to make his (plaintiff) mother the beneficial owner of certain real property. *Malhotra I* at 1. The son argued that the arbitration clause contained in a contract between a company founded by his father, who was also a plaintiff, and signed by them both, required their dispute to be arbitrated. *Id.* The court did not compel arbitration.

The *Malhotra* case is distinguishable. There, the trial court found that each of the plaintiffs' claims arose independently of the contract at issue and the appellate court found that the

12

claims did not relate to conduct that could not have occurred but for the contract. *Malhotra I* at 6; *Malhotra II*, 673 F. App'x at 668. Here, the claims have not arisen totally independent from the Button Deed and SteppeChange states that it would not have continued to work on the DMP Project but for its reliance on a course of dealing established by the Button Deed. For example, when stating its fraud claim, SteppeChange represents that "SteppeChange's reliance on VEON's and/or Wind's intentional misrepresentations and false promises was reasonable, including in view of VEON's and Wind's conduct with respect to the Button project, including payment to SteppeChange for its investments in the Button project and resolution of all claims concerning it." Compl. ¶ 146.

SteppeChange also cites to *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021, 1035 (N.D. Cal. 2015), *Radware, Ltd. v. F5 Networks, Inc.*, No. C-13-02024-RMW, 2013 WL 6773799, at *3 (N.D. Cal. Dec. 23, 2013) and *Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343, 1353 (C.D. Cal. 2015) to argue that carveouts of certain disputes in a contract's arbitration provision do not require those disputes to be arbitrated. Oppo. to VEON's Mot. to Compel 6 n.3. These cases do not apply because the contracts in them did not delegate the question of arbitrability to the arbitrator.

Finally, SteppeChange contends that the DMP carveout provision in the Button Deed (Recitals A and B) are dispositive and remove claims related to the DMP Project from any questions of arbitrability. *Id.* at 3-5. Numerous courts in this circuit have found that despite a carveout, the question of arbitrability, even on the subject of what has been carved out, must be decided by the arbitrator. *See Oracle Am.*, 724 F.3d at 1076–77 (holding that the determination of whether claims fell within the carve-out of the arbitration agreement was reserved for the arbitrator); *In re: Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2016 WL 5791357, at *5 (N.D. Cal. Oct. 4, 2016) (finding the question of whether the unambiguously carved out injunctive relief was subject to the arbitration agreement not "wholly groundless" given the overlap between the covered damages remedy and the injunctive relief sought); *Bitstamp Ltd. v. Ripple Labs, Inc.*, No. 15-CV-01503-WHO, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015) (finding that the assertion of arbitrability even with respect to claims that were "carved out" of the

13

1  agreement was not "wholly groundless" given the parties' agreement to arbitrate "any dispute,
2  claim or controversy arising out of th[e] Agreement");

VEON's argument that the arbitrator must decide the arbitrability of this dispute is not "wholly groundless" and I grant VEON's motion to compel arbitration. That said, I adopt the Hon. Thelton Henderson's comment in a similar case about arbitrability: "[T]his should not be interpreted as the Court endorsing Defendant's position, as it might have arrived at a different conclusion under a less forgiving standard." *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 976 (N.D. Cal. 2015)

## II. WIND'S MOTION TO COMPEL ARBITRATION

Wind also moves to compel arbitration arguing that under the doctrine of equitable estoppel, a nonsignatory defendant may invoke the arbitration clause when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations. Wind's Motion to Compel Arbitration [Dkt. No. 35] 5-6. Wind also argues that because the arbitrability of SteppeChange's claims against Wind will turn on English law, an English arbitrator should decide whether SteppeChange's claims against Wind are arbitrable. *Id.* at 6-7. In the alternative, Wind asks that I stay litigation of SteppeChange's claims against Wind while SteppeChange and VEON arbitrate. *Id.* at 8-9.

District courts have the discretion to stay actions involving non-signatories to an arbitration agreement. *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("[I]t may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.")). "Where some litigants are not parties to the arbitration agreement, the court may nonetheless stay the entire action if arbitration of claims against a party to an arbitration agreement is likely to resolve factual questions coextensive with claims against nonparties to that arbitration agreement." *Jaffe v. Zamora*, 57 F. Supp. 3d 1244, 1248 (C.D. Cal. 2014) (internal citations and quotation marks omitted). "This procedure is premised on considerations of judicial economy and avoidance of confusion and possible inconsistent results." *Id.* (internal citations and

14

quotation marks omitted).

Wind does not have the right to compel arbitration. SteppeChange sued it here and it has the right to keep the case here. That said, judicial and litigation economy and the avoidance of inconsistent decisions counsels that only one forum should decide the entire case. Accordingly, I will stay this matter until the arbitrator determines whether the matter should be arbitrated under the terms of the agreement. The parties shall notify the Court (with a copy of the arbitrator's decision attached) within a week of the decision and shall at the same time file a stipulation and proposed order requesting a Case Management Conference at the earliest date practicable.

**VI. MOTIONS TO SEAL**

In support of VEON's removal of this case, VEON moves to seal portions of the Button Deed containing nonpublic pricing terms, private bank account information and personal identification information of both parties and nonparties. [Dkt. No. 3]. VEON's redactions are narrowly tailored and will not impede the public's interest in this case. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). For good cause shown, VEON's motion to seal is granted.

SteppeChange has also moved to introduce the entirety of the DMP Software Development & Marketing Agreement between Wind and meForo under seal in support of its opposition to Wind's motion to dismiss. [Dkt. No. 47]. Wind supports SteppeChange's motion to seal, arguing that the agreement's confidentiality provision requires its signatories not to disclose the agreement publicly. [Dkt. No. 50]. Wind has previously requested that I take judicial notice of the heavily redacted DMP Software Development & Marketing Agreement in support of its motion to dismiss. [Dkt. No. 36]. As I am staying this matter pending arbitration and denying without prejudice the motions to dismiss, I will deem SteppeChange's motion withdrawn and allow the document to remain under seal temporarily until I consider Wind's motion to dismiss. SteppeChange shall re-file its motion to seal at that point.

**CONCLUSION**

SteppeChange's motion to remand is denied.

VEON's motion to compel arbitration concerning arbitrability is granted and this matter is

stayed pending resolution of the arbitrator's determination concerning arbitrability. Wind's motion to compel arbitration is denied except that SteppeChange's claims against Wind are stayed pending the arbitrator's determination concerning arbitrability.

Defendants' motions to dismiss are denied without prejudice to re-filing once the stay is lifted. VEON's motion to seal is granted. SteppeChange's motion to seal is deemed withdrawn, the document may remain under seal temporarily until I consider Wind's motion to dismiss, and SteppeChange shall re-file its motion to seal at that point.

**IT IS SO ORDERED.**

Dated: December 5, 2018

William H. Orrick
United States District Judge